UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SAMUEL A. BURNETTE,

                     Plaintiff,

v.                                                                      Case No. 24-cv-886-pp

ELIZABETH TEGELS, *et al.*,

                     Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

      Plaintiff Samuel A. Burnette, who is incarcerated at Jackson Correctional Institution and is representing himself, filed this lawsuit, alleging that the defendants violated federal and state laws. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

      On July 17, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $10.77. Dkt. No. 5. The court received that fee on September 4,

2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter Cnty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B. <u>The Plaintiff's Allegations</u>

The complaint names as defendants Warden Elizabeth Tegels, Health Services Unit (HSU) Administrator Tammy Maassen, Nurse A. Luebchow, unspecified employees of the Institution Complaint Examiner's Office, Deputy Warden K. Garceau and Reviewing Authority H. Gunderson. Dkt. No. 1 at ¶¶32–37. The plaintiff also sues the companies 3M and Avery Dennison Corporation. <u>Id.</u> at ¶¶38–39. Finally, he sues Director Wes Ray, Superintendent Mark Hennessy, Specialists Lynn Jessie and Trent Lien and Supervisor Addam Martinson of Badger Correctional Enterprises (BCE).[1] <u>Id.</u> at ¶¶40–44. He sues all defendants in their individual capacities and sues all defendants except 3M and Avery Dennison in their official capacities. <u>Id.</u> at ¶¶32–44.

The plaintiff alleges that he arrived at Jackson on October 1, 2021. <u>Id.</u> at ¶1. On January 2, 2022, he began work at BCE making road signs. <u>Id.</u> at ¶2. He says that BCE told him that he would be exposed to products containing

---

[1] The court infers that "Badger Correctional Enterprises" is the same entity as the Bureau of Correctional Enterprises. <u>See</u> Bureau of Correctional Enterprises, <u>About Us</u>, https://www.shopbce.com/about-us.

3

Case 2:24-cv-00886-PP   Filed 10/18/24   Page 3 of 16   Document 13

carcinogenic chemicals. Id. The plaintiff alleges that 3M and Avery Dennison manufactured these chemicals. Id. at ¶3. He says these products also contain PFAS and PFOA,[2] but that most of the public and Jackson staff are not aware of that or of proper disposal practices. Id. at ¶¶4–5.

The plaintiff alleges that while he was working at BCE, no representatives from 3M and Avery Dennison came to speak with BCE staff about how to safely dispose of the chemicals and products. Id. at ¶6. The plaintiff alleges that he "did witness meetings" between Warden Tegels, Rob Mann (head of maintenance at Jackson—not a defendant), an unnamed head of finance, Hennessy, Martinson and Jessie regarding "the cost to change and enhance the ventilation system in the space occupied by the BCE shop." Id. at ¶8. He says the defendants are "aware of the dangers of the chemicals used and the risk of getting cancer from inhaling those chemicals in a confined space such as the space occupied by the BCE shop." Id.

The plaintiff alleges that on May 3, 2023, all incarcerated persons at Jackson received a memorandum stating that the water supply for the town of Brockway was tested, with positive results for PFAS and PFOA. Id. at ¶9. The detected levels were within accepted state and federal limits, although the plaintiff says incarcerated persons were not told what those levels are. Id. at ¶10. The memo assured recipients that those chemicals "cannot be absorbed in the skin and that the Institution staff were reviewing internal filter systems" and would add "filtration systems . . . as needed." Id. The plaintiff says Jackson

---

[2] These acronyms stand for perfluoroalkyl and polyfluoroalkyl substances (PFAS) and perfluorooctanoic acid (PFOA). See American Cancer Society, PFOA, PFOS, and Related PFAS Chemicals, available at https://www.cancer.org/cancer/risk-prevention/chemicals/teflon-and-perfluorooctanoic-acid-pfoa.html.

staff were provided bottled water while working, as were residents of Brockway. Id. at ¶¶11–12. News of "the contamination" in Brockway spread, and the town sought state funding to add filtration systems. Id. at ¶¶12–13.

The plaintiff says that the next day—May 4, 2023—persons incarcerated at Jackson received another memo informing them that charcoal and osmosis filters were being added to ensure that their water supply "was not contaminated." Id. at ¶14. On May 9, 2023, Warden Tegels sent a third memo explaining that all water sources at Jackson had granular-activated filters, and that she intended to install reverse osmosis filters in program buildings and at work sites. Id. at ¶15. She reiterated that PFAS and PFOA cannot be absorbed through the skin. Id.

On May 8, 2023, the plaintiff filed an administrative complaint about the PFAS in the water, but he says it "was not accepted." Id. at ¶16. He attempted to modify his complaint, but it "was still not accepted." Id. The plaintiff says that an unidentified complaint examiner's office employee did not accept his complaint, but he does not say why. Id. He filed another complaint on May 9, 2023, but the complaint examiner's office did not accept it and told the plaintiff that all concerns about the water supply "are being directed to the Warden." Id. at ¶17. That office told the plaintiff to resubmit his complaint, file an interview request to the warden and await a response, which he then could resubmit with his complaint. Id. The plaintiff says the warden did not respond to his complaint within fourteen days, the time limit under Wis. Admin. Code §DOC 310.10(6). Id. at ¶18.

The plaintiff alleges that on June 12, 2023, he sent a request to the HSU to be "tested for diseases associated with exposure to PFAS or PFOA in drinking water." Id. at ¶19. Defendant Luebchow responded to the plaintiff's

5

request and told him, "HSU is not testing for this concern at this time." Id. at ¶20. On August 15, 2023, Warden Tegels sent another memo to incarcerated persons at Jackson, reiterating that new filters were being installed and noting that testing in Brockway showed improvement in the levels of PFAS, which "remain just over the threshold for the Department of Health Services standards." Id. at ¶21.

On May 28, 2024, the plaintiff sent to the HSU another request for testing. Id. at ¶22. Dr. Wilson (not a defendant) responded that Jackson "does not do PFAS testing." Id. at ¶23. Two days later, the plaintiff wrote an interview request to Maassen about his concerns about PFAS testing. Id. at ¶24. He also sent a request to Warden Tegels about the PFAS testing, as the complaint examiner had instructed him a year earlier. Id. at ¶25. On June 1, 2024, Maassen returned the plaintiff's request and responded that she had "forwarded concern to nursing management." Id. at ¶26. The plaintiff says HSU staff have not contacted him for an appointment for PFAS testing.[3] Id. On June 13, 2024, Warden Tegels responded to the plaintiff's request and mentioned the efforts in Brockway to find an alternative water source, but she did not respond to the plaintiff's "core issues" about medical care for PFAS testing. Id. at ¶27.

On June 19, 2024, the plaintiff filed another administrative complaint about the lack of medical care for PFAS testing, which the complaint examiner's office accepted. Id. at ¶28. He attached copies of his requests to Tegels and Maassen. Id. He says the complaint examiner's office rejected this complaint as untimely, even though he followed the instructions given to him by the previous complaint examiner. Id. at ¶29. The plaintiff appealed the

---

[3] The plaintiff signed the complaint on July 9, 2024—a month and eight days after Maassen's response to the plaintiff. Dkt. No. 1 at 9.

rejection of his complaint, but Gunderson accepted the complaint examiner's rejection as appropriate. Id. at ¶¶30–31.

The plaintiff claims that defendants Maassen, Luebchow, Tegels and Garceau were deliberately indifferent to his medical needs by failing to provide PFAS testing for persons incarcerated at Jackson who may have been exposed to PFAS or PFOA. Id. at ¶48. He says the defendants refused testing to determine his potential exposure and "if any injury actually occurred." Id. He claims that Tegels, Garceau, Gunderson and the unspecified complaint examiner's office employees violated his right to due process under the Fifth and Fourteenth Amendments by rejecting or denying his administrative complaints. Id. at ¶¶50, 52. The plaintiff claims that "[a]ll the Defendants" violated his rights under the Eighth Amendment to "a maximally safe environment, one completely free from pollution or safety hazards." Id. at ¶54. The plaintiff requests protection from the defendants under the Whistleblower Protection Act. Id. at ¶56 (citing 5 U.S.C.A. §2302(b)(8)(A)). He says he "fears retaliation and other means of punishment" for bringing this lawsuit. Id. Finally, the plaintiff seeks to bring a claim under state law for emotional and mental distress. Id. at ¶58. He seeks unspecified damages and unspecified injunctive relief under the Whistleblower Protection Act. Id. at ¶¶48, 50, 52, 54, 56, 58.

C.  Analysis

The court reviews the plaintiff's allegations about the water quality at Jackson under the Eighth Amendment, which prohibits cruel and unusual punishments. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer, 511 U.S. at 834. To satisfy the

objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. To satisfy the subjective component, the plaintiff must demonstrate that prison officials acted with the requisite intent, that is, that they had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776.

The complaint alleges facts very similar to the facts alleged in the complaint in Carroll v. DeTella, 255 F.3d 470 (7th Cir. 2001). There, a long-time incarcerated person in Illinois sought damages and injunctive relief against prison officials on claims that the drinking water at two prisons was contaminated with radium and lead. Id. at 471. At one of the prisons, Stateville Correctional Center, incarcerated persons complained about the water quality, and the warden assured them that the water was safe to drink. Id. at 472. Nonetheless, "three days later the prison began providing its employees with bottled water free of charge to allay their concerns about the safety of the prison's water." Id. (emphasis omitted). Three years later, the Illinois Environmental Protection Agency (EPA) determined that the water at Stateville "contained radium in excess of the maximum level set by the federal EPA." Id. No remedial action was taken, but the next year, the federal EPA considered raising the maximum acceptable level of radium to a level higher than that found at Stateville. Id. That never happened, and the Court of Appeals noted that there was some medical evidence that the level of radium in the water of Stateville could lead to an increased risk of cancer if consumed long-term. Id.

Nonetheless, the Court of Appeals affirmed the district court's dismissal of Carroll's complaint. Id. at 472–73. The court explained that, "Poisoning the

8

Case 2:24-cv-00886-PP   Filed 10/18/24   Page 8 of 16   Document 13

prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate." Id. at 472 (citing Helling v. McKinney, 509 U.S. 25 (1993)). "But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not" cruel and unusual punishment. Id. (citing cases). The court recounted that many non-incarcerated persons "live under conditions of exposure to various contaminants," and the Eighth Amendment "does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." Id. The court refused to read into the Eighth Amendment "a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures." Id. at 472–73. The Seventh Circuit also found that the prison providing bottled water to its employees "does not show an awareness of a substantial hazard." Id. at 473. It explained, "Prison officials do not demonstrate that deliberate indifference to the inmates' welfare . . . when they refuse to take measures against hazards that they reasonably believe to be nonexistent or slight." Id.

  The facts that the plaintiff alleges in his complaint bear may similarities to the facts in Carroll. The plaintiff alleges that he worked at BCE, where he was exposed to chemicals that may cause cancer if ingested or inhaled. He alleges that in May 2023, he received a memorandum stating the water supply for the town of Brockway tested positive for PFAS and PFOA, but that those levels were within accepted state and federal limits.[4] Despite those levels being within

---

[4] The plaintiff does not allege that Jackson is in Brockway (it is in Black River Falls), nor he does not allege when he was in Brockway, if ever.

acceptable ranges, Jackson administrative staff notified all incarcerated persons about the water and implemented water-filtration systems. The plaintiff alleges that Jackson provided staff bottled water, as Brockway did for its residents. The plaintiff sought medical testing to determine if he was exposed to contaminated water and could be suffering possible symptoms of PFAS and PFOA exposure, but medical staff told him that the HSU was not testing for that concern.

The plaintiff has not alleged a reasonable basis to believe he has been exposed to objectively unsafe drinking water and that the defendants were aware of and deliberately indifferent to a substantial risk to his health and safety from that exposure. The plaintiff does not allege that the water at Jackson is problematic. He alleges only that in May 2023, the water in a nearby town was contaminated. Even then, and unlike in Carroll, the levels of PFAS/PFOA in the water were *within* acceptable federal and state levels. That means there was no objectively serious risk to the plaintiff's health or safety from drinking the water, not even a "probabilistic or future" risk of harm. Carroll, 255 F.3d at 472. The risk was "nonexistent or slight." Id. at 473. Nonetheless, Warden Tegels informed incarcerated persons of the issue and assured them that the PFAS/PFOA levels in the water at the prison were not unsafe. Prison officials also took steps to improve the water quality, including installing new filtration systems. That the prison offered staff bottled water does not mean that it was aware of a substantial risk to incarcerated persons and disregarded it. See id. The complaint alleges no facts suggesting that the plaintiff faced a substantial risk of serious harm and that the defendants were deliberately indifferent to that risk.

The plaintiff also claims that the defendants violated his Eighth Amendment right to a "maximally safe environment" free of pollutants or safety

hazards. It appears the plaintiff may have lifted this language from the decision in Carroll. But as the court in that case explained, the Eighth Amendment does not confer such broad protection for anyone, incarcerated or not. Id. at 472 (noting that "failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not" cruel and unusual punishment). The Eighth Amendment requires only reasonable efforts to guarantee the safety of incarcerated persons. See Farmer, 511 U.S. at 832. As explained above, the complaint does not allege that prison officials failed to provide the plaintiff a reasonably safe environment. The complaint does not state a claim under the Eighth Amendment.

Nor does the complaint state a due process claim regarding the plaintiff's rejected administrative complaints because the plaintiff has no due process right to a meaningful prison grievance system. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause . . . ." (citation omitted)). The plaintiff does not allege that the unidentified complaint examiner's office employees violated his rights outside of rejecting or denying his administrative complaints or appeals. His allegations about his rejected, denied or unresolved grievances are insufficient to state a claim. See id.; George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007).

The complaint has not stated a claim against defendants Garceau, Ray, Lien, Hennessy, Jessie or Martinson. The complaint contains no allegations against Garceau, Ray or Lien. The only allegation against Hennessy, Jessie and Martinson is that they met with Warden Tegels about updating the ventilation system at BCE. This single allegation does not explain how these defendants

violated the plaintiff's rights. If anything, it suggests that the defendants were considering further efforts to *improve* the water or air quality at Jackson or BCE. The plaintiff cannot proceed against defendants without establishing how they are personally responsible for the alleged deprivation of his rights. Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). It is not enough to allege broadly that "the defendants" violated his rights, as the complaint does. See Henderson v. Wall, Case No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) (citing Twombly, 550 U.S. at 555; and Bank of America, N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013)) (affirming district court's dismissal of complaint that "ma[de] allegations about large, indeterminate groups of defendants").

The plaintiff also cannot proceed against 3M and Avery Dennison. To state a claim under §1983, a plaintiff must allege: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). The plaintiff's claim against 3M and Avery Dennison fails at the second element because he has not alleged that those companies were acting under color of state law. These are private companies that the plaintiff seeks to hold responsible for the water contamination because they provided products to BCE that the plaintiff says were improperly disposed of. That those companies sold products used at BCE is insufficient to make them state actors for purposes of §1983. See Steading v. Thompson, 941 F.2d 498, 499 (7th Cir. 1991) (citing Rendell–Baker v. Kohn, 457 U.S. 830, 840–41 (1982)) ("A private firm does not become a state actor by selling its products to the government."). Even if the plaintiff had alleged facts sufficient to consider 3M and Avery Dennison state actors, his speculation that their products caused the contaminated water is not

12

entitled to the presumption of truth and is insufficient to state a plausible claim for relief. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The plaintiff also seeks protection under the Whistleblower Protection Act, 5 U.S.C. §2302, including unspecified injunctive relief. Even if the plaintiff had explained *what* injunctive relief he seeks, he would not be entitled to it because §2302 applies only to "federal civil servants . . . who have suffered adverse personnel actions as a result of making protected disclosures of wrongdoing within their agencies." Delgado v. United States Dep't of Just., 979 F.3d 550, 553 (7th Cir. 2020). The plaintiff is not a federal civil servant; he is a person incarcerated in a state prison who worked for BCE, itself a state entity operating within the DOC. Nor does he allege that he suffered, or will suffer, an "adverse personnel action" due to filing this lawsuit, which does not allege sufficient "wrongdoing." The plaintiff says he fears retaliation from Jackson staff. The First Amendment amply protects the plaintiff from such retaliation, which he does not allege has occurred. The Whistleblower Protection Act does not offer him additional protection from retaliation for bringing this lawsuit.

For the reasons discussed above, the complaint fails to state a claim for relief. Because the complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any putative claims arising under state law. The court will dismiss any state law claims without prejudice pursuant to 28 U.S.C. §1367(c)(3).

Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th

Cir. 2015)). The plaintiff's factual allegations about the water at Jackson are thorough and exhaustive. The court finds it certain that allowing him to provide more information about these events would not change the court's conclusion that the issues of which he complains do not state a federal claim. The court will not allow the plaintiff to amend his complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).[5]

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

---

[5] This is the plaintiff's second strike. See Burnette v. Schmaling, *et al.*, Case No. 20-cv-1792-bhl (dismissed March 30, 2021, for failure to state a claim).

The court will send a copy of this order to the Warden at Jackson Correctional Institution where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 18th day of October, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**